FILED

2014 JAN 10  PM 4: 19

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KURT BARTON,
                    **Movant,**

-vs-                                                    Case No.  A-13-CA-910-SS
                                                        [No. A-11-CR-083-SS]
UNITED STATES OF AMERICA,
                    **Respondent.**

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Kurt Barton's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#117], Barton's Motion for Discovery [#118], the Government's Response [#122], and Barton's Reply [#123]; and Barton's Motion to Add Attachment [#124].[1] Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

On February 15, 2011, Barton was indicted and charged with thirty-nine separate counts, including securities fraud, wire fraud, false statements related to a loan, money laundering, and conspiracy to commit the same offenses. Barton used his company, Triton Financial, and related entities to run a Ponzi-like scheme and defraud investors out of more than sixty million dollars. Barton's investors were primarily members of his church, retired individuals (or those nearing retirement), professional athletes, and Barton's family members and friends.

_____

[1] The motion to add the attachment to Barton's Reply is GRANTED.

On February 25, 2011, this Court appointed attorney Rip Collins to represent Barton, and set a trial date of April 25, 2011.[2] Barton moved for a continuance on April 1, 2011, based on Collins's trial schedule and the complexity of this case. This Court granted the motion and reset the trial date for August 8, 2011. On July 8, 2011, Barton again moved for a continuance, and moved for the appointment of a financial expert and additional counsel.[3] This Court granted the motion to appoint additional counsel, and appointed attorney David Gonzalez to represent Barton. The motion requesting a financial expert was denied without prejudice to refiling, based on the lack of specificity as to the need, purpose, and identity of the requested expert.[4] The motion to continue was denied, based on the considerable amount of time Barton and his counsel had been given to prepare for trial, especially considering the Government's open-file discovery policy.

Barton proceeded to trial on August 8, 2011. On August 17, 2011, the jury returned a verdict and found Barton guilty on all counts. Barton subsequently moved for a new trial, alleging the Court improperly denied his second motion to continue the trial date and arguing trial counsel provided ineffective assistance because they lacked sufficient time to prepare a defense. This Court denied the motion, finding Barton's allegations to be incredible in light of the time and resources given to Barton's defense team and the overwhelming evidence of Barton's guilt presented at trial. *See* Order of Sept. 7, 2011 [#70].

---

[2] Prior to Barton's indictment, he had already retained another criminal defense attorney, Joe Turner. After the indictment, Barton contended he could no longer afford to retain counsel, and thus Collins was appointed.

[3] Three days later, on July 11, 2011, Barton filed a second motion to appoint additional counsel.

[4] Barton refiled the motion with additional details two weeks later, *ex parte* and under seal per this Court's instructions, and the Court granted the motion and appointed a forensic accountant, Edmond Martin, at taxpayer expense to assist in Barton's defense.

Barton was sentenced on November 4, 2011. This Court sentenced Barton to various terms of imprisonment across the thirty-nine counts, but all were ordered to run concurrently for a total sentence of 204 months, followed by a five-year term of supervised release. This sentence was a downward variance from Barton's guideline range of life in prison. Barton was also ordered to pay restitution to his victims in the amount of $63,707,496.00.

Barton appealed, raising four issues for review: (1) this Court erred by denying Barton's second motion to continue; (2) Barton was entirely denied his Sixth Amendment right to counsel, because counsel failed to provide any meaningful representation under *United States v. Cronic*, 466 U.S. 648 (1984); (3) there was insufficient evidence to sustain Barton's convictions on various wire fraud and money laundering counts; and (4) there was insufficient evidence of five additional money laundering counts based on the "merger problem" discussed in *United States v. Santos*, 553 U.S. 507 (2008). The Fifth Circuit affirmed this Court's judgment "in all respects." *United States v. Barton*, 526 F. App'x 360, 364 (5th Cir. 2013) (unpublished).

Barton filed his § 2255 motion on October 16, 2013. In the motion, Barton raises two general grounds for relief: (1) Barton received ineffective assistance of counsel, because trial counsel (a) failed to adequately test the Government's case; (b) failed to conduct an adequate pretrial investigation; (c) failed to identify a defense; (d) failed to call certain defense witnesses; (e) deprived Barton of effective counsel based on cumulative errors; and (f) deprived Barton of effective counsel based on a conflict of interest between Rip Collins and his partner, Roy Minton; and (2) the Government committed a *Brady* violation by failing to timely provide Barton's appointed forensic accountant with complete accounting data.

## Analysis

### I.      Section 2255—Legal Standard

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

### II.     Barton's Claims

Barton raises two general grounds for relief, which the Court addresses in turn.

### A.      Ineffective Assistance of Counsel Claims

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In evaluating counsel's performance, care must be taken to "eliminate the distorting effects of hindsight." *Id.* at 690. Accordingly, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* If counsel's performance is found to be deficient, it must also have prejudiced the result to afford any relief to the defendant. *Id.* at 691. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

1.      **Lack of Meaningful Adversarial Testing**

Barton contends counsel failed to meaningfully test the Government's case. The precise scope of this argument, based on Barton's ninety-five page memorandum in support of his motion, is unclear. At first glance, it appears to be merely prefatory. *See* Def.'s Mot. [#117-1], Ex. A (Def.'s Mem.), at 12 (referencing "the following specific examples" recounted in other portions of the memorandum). To the extent Barton is raising the same *Cronic* issue he raised on direct appeal, the Fifth Circuit has already determined Barton received meaningful representation. *Barton*, 526 F. App'x at 362 ("Here, counsel represented Barton throughout the proceedings below. Barton's first-appointed attorney successfully moved for the appointment of a second attorney who in turn assisted with the final month of preparation and advocated on Barton's behalf during and after trial. During trial, counsel lodged objections, examined witnesses, and argued the case to the jury."). The Fifth

Circuit thus held "[a]ny deficiency in the quality of this representation plainly sounds under *Strickland* rather than *Cronic*." *Id.* To the extent Barton's argument is based on the various alleged errors committed by his trial counsel, those are discussed below.

Barton's motion is DENIED on this ground.

## 2.    Failure to Conduct an Adequate Pretrial Investigation

Barton faults his counsel for failing to adequately investigate his case. Barton notes his case was complex, and claims counsel admitted "they had no real strategy" and "called no defense witnesses, did not use the accounting, and did not know enough about the case to effective[ly] submit documents or cross-examine witnesses." Def.'s Memo. [#117-1], at 14. Barton does not particularly identify any aspects of counsel's investigation which were deficient, but instead refers generally to later portions of his ninety-five page memorandum as proof he was prejudiced. *See id.* ("The bulk of the showing in this petition proves that because counsel did not investigate the case, they were at a 'substantial disadvantage' during trial, and this created prejudice.").

Barton's counsel had a duty to conduct a reasonable investigation in light of the evidence and their professional experience and judgment. *See Strickland*, 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Barton has not shown his counsel failed to adequately investigate his case, or prejudiced Barton as a result.

To begin, the Court notes Barton blatantly misrepresents a number of documents in the record in an attempt to establish counsel's shortcomings. For example, Barton contends his trial counsel "tendered numerous affidavits testifying of their deficient performance in Motions for

Continuance, in a Rule 33 Motion, [and] in Motion for Appointment of New Counsel on Appeal." Def.'s Mem. [#117-1], at 18. A cursory review of the documents Barton references reveals his claim to be a gross misrepresentation of the facts.

First, Barton references the motions to continue filed by Collins. [##20, 31]. The first motion merely recounts Collins's trial schedule and requests a continuance based on the complexity of the case. The second represents one of counsel's trials took longer than anticipated, and counsel believed he needed more time to adequately prepare for trial. Neither motion contains any admission of counsel's deficient investigation or performance generally. Additionally, the Fifth Circuit affirmed this Court's decision to deny the second motion to continue, holding "Barton's generalized assertions that his attorneys could have presented a stronger defense with more time to prepare fall short of demonstrating serious prejudice." *Barton*, 526 F. App'x at 362.

Second, Barton refers to the Rule 33 motion for new trial filed by Gonzalez. [#67]. Once again, counsel did not admit deficient performance. Instead, counsel admitted to being "overwhelmed by the amount of discovery" and noted "his performance would have improved with several more months of preparation time." *Id.* at 3. This is true of every attorney in every case, and is precisely the kind of generalized "better performance" argument rejected by the Fifth Circuit as insufficient in Barton's appeal. As Collins recognizes in the only actual affidavit from him present in this record, "[t]here is not a lawyer alive that doesn't need more time when trial arrives." Gov't's Resp. [#122-1], Ex. B (Collins Aff.), at 2. However, despite counsel's difficulties, counsel does not admit deficient performance or prejudice. To the contrary, counsel concedes on multiple occasions Barton's complaints and counsel's tactical shortcomings did not make a difference in the outcome of the case. *Id.* at 2–3.

Third, Barton points to the motion to appoint new counsel on appeal. [#81]. Although Barton represents various statements contained in this motion to be admissions of counsel—e.g., the statement "Trial counsel did not spend enough time preparing for Mr. Barton's defense"—these statements are clearly a recounting of the issues Barton sought to raise on appeal or via a § 2255 motion, not a confession by counsel. *Id.* at 3. Barton's arguments lack any basis in fact. They are clearly gross misrepresentations of counsel's pleadings, and offered for no purpose other than to mislead the Court into believing counsel confessed to providing ineffective assistance when no such confession exists.

Moving beyond these filings, Barton also claims counsel's failure to use the accounting records demonstrates their insufficient investigation. Barton does not specifically identify any of this accounting data, nor provide it with his motion, nor explain how it would have demonstrated his innocence at trial. Generic arguments are insufficient to show counsel's pretrial investigation was unreasonable. *See Green*, 882 F.2d at 1003.

Barton also references a variety of documents he claims counsel failed to investigate. Barton claims counsel failed to discover, and subsequently utilize, Barton's degree from Colorado State University, instead allowing the Government to repeatedly elicit testimony from victims indicating they would not have invested with Barton had they known he lacked a college degree. Barton also points to various documents provided to his investors, the "Mick Report," documents regarding co-defendant John DiMeglio's fraudulent activities in California, and a credit card statement proving a $1,500 check issued to Barton was reimbursement for a business expense.

Barton has not shown counsel's investigation was inadequate. With respect to his alleged college degree, the transcript copy Barton attaches does not indicate Barton ever earned a degree

from Colorado State University, and thus would have done nothing to rebut the Government's questioning regarding Barton's lack of any college degree.[5] Similarly, Barton does not provide any proof of the "credit card statement" he claims counsel failed to find, nor indicate where it might be found or why it was not included in the twenty boxes of documents produced by the Government or the nearly 400 pages of exhibits he attached to his motion.[6]

Collins addresses the investor documents in his affidavit. Specifically, Collins explains he understood Barton's business model and was familiar with the various investor documents, but found them largely irrelevant because the investors never agreed to have their money used in the way the evidence showed Barton used it. Collins Aff. at 3. Further, Collins notes he did interview Triton's general counsel and Triton's Chief Operating Officer, but concluded the testimony of both witnesses would be detrimental to Barton's defense. *Id.* at 4. The evidence in the record thus shows counsel was actively investigating Barton's case and making reasonable strategic choices about which avenues to pursue.

Even if Barton could show counsel's investigation was somehow deficient, he has not shown he was prejudiced. As this Court previously explained in denying Barton's motion for new trial:

> As the trial record will attest, the defendant Barton was competently represented. The record further establishes the simple fact the defendant Barton had no defense. The prosecution consisted primarily of a number[] of witnesses who

---

[5] The transcript contains no statement indicating any degree was ever awarded to Barton. It also reveals Barton outright failed four of his final ten courses, and earned C and D grades in the vast majority of courses he took at Colorado State University. The transcript also apparently contains a second page, but Barton does not include it. Although Barton may believe it would have been helpful to tell the jury he claims to have a degree in Biological Science despite having no transcript showing a degree was awarded and despite failing numerous science courses, counsel's decision not to present such evidence to the jury is well within the boundaries of sound trial strategy.

[6] In his Reply, Barton apparently claims the credit card statement is attached as his final exhibit. The last twenty-one pages of Barton's exhibits do comprise an American Express business credit card statement showing activity by a number of individuals, but no particular expenditure is ever identified or highlighted as particularly relevant.

testified to the oral and written representations and statements of the defendant and his conduct in producing falsified documents, making false statements and resulting in obtaining money from investors that never went to the purpose of the investment. Barton's employees admitted inappropriate conduct at his instructions. The prosecution provided a breakdown of the financial information regarding all deposits to Barton's legal entities and the disbursements of those deposits. The trail of these funds led to no result other than support of the charges in the indictment. Other than cross-examination, there was nothing defense counsel could have done to attack the presentation of the prosecution's evidence. The breakdown of all deposits from the investors with the immediate withdrawal and expenditures specifying receipt of the funds regarding the various legal entities created by Barton was simple mathematics. [FN5] The remainder of the trial was about what Barton personally did, said, wrote, and instructed. There was never any defense to Mr. Barton's conduct other than perhaps in his own mind. A review or re-review or a re-re-review of the financial information from the United States Attorney, [FN6] the bank records and Barton's personal expenditures all available to the defense, would not have altered any of the prosecution's evidence. It was not even necessary for the prosecution to use John DiMeglio as a witness against the defendant. DiMeglio was a co-conspirator and CFO and pled guilty to the conspiracy on the first day of trial. At all times to the undersigned's observations, both appointed counsel provided as competent legal representation as possible under the circumstances.

[FN5] Consistent with the Court's conclusion Barton had no plausible defense is the fact that he never called his Court-authorized financial expert to rebut the government's theory.

[FN6] The records in the custody of the United States Attorney were obtained from the Receiver who obtained them from the defendant, the CEO of the corporate entities and partnerships.

Order of Sept. 7, 2011 [#70], at 3–4.

Notwithstanding his current inability to accept it, the case against Barton was sound. Seventeen witnesses testified to the misrepresentations Barton made to them as investors. Barton's own employees testified to falsifying records to send to banks at his specific instruction. *See* Gov't's Resp. [#122-1], Ex. D (Nienhaus Test.), at 88–93. Counsel actively cross-examined witnesses, including investors on the topic of their investor agreements, and even introduced several agreements as trial exhibits. The jury was fully aware of what documents the investors signed, and nevertheless

found Barton guilty on all thirty-nine counts. The jury also heard Barton's father and brother testify

they attended Barton's graduation ceremony at Colorado State University. Trial Tr. [#94], at 79. The

jury then heard them testify they were not aware Barton had not earned enough credits to actually

receive a degree. *Id.*; Gov't's Resp. [#122-2], Ex. F (Kristopher Barton Test.), at 73.

Barton's personal stake in his case likely prevents him from recognizing the reasons his

counsel did not present certain evidence Barton believes to be favorable. For example, Barton faults

counsel for not introducing evidence of prior fraudulent conduct of DiMeglio in California, but

counsel could easily have recognized the presentation of such evidence would show Barton should

never have brought DiMeglio in to the Triton enterprise as a partner, and should never have relied

on him. Additionally, the fact DiMeglio was also guilty of fraud does not exculpate Barton,

particularly when the jury heard plenty of evidence of Barton's own fraudulent activities unrelated

to DiMeglio's actions. Similarly, while Barton places much stock in the "Mick Report," a due

diligence opinion prepared for a Triton entity, the report admits it was based on unaudited Triton

financial statements provided by DiMeglio. There is simply no reason to believe the jury would not

have convicted Barton based on a third party review of particular investments based on records

prepared by a Triton employee Barton himself admits was crooked.

Barton's motion is DENIED on this ground.

### 3.    Failure to Identify a Defense

Barton faults counsel for failing to identify a defense. Both the trial record and Collins's

affidavit show counsel did have a theory of defense: Triton was a legitimate business, not a Ponzi

scheme. *See* Collins Aff. at 2 ("From the beginning of the trial until the end—the same theme was

hammered on that this was not a Ponzi Scheme but a legitimate enterprise that had gone bad. With

the set of facts that co-counsel, David Gonzalez, and I were confronted with, this was the only theory

of defense plausible."). Counsel plainly had a defense theory, and advanced that theory through

cross-examination of witnesses, introduction of evidence, objections, and advocacy to the jury.

Counsel's performance cannot be deemed deficient simply because the jury rejected the theory of

the defense. Further, to the extent Barton would have preferred counsel to defend on the additional

ground DiMeglio was the only guilty party (despite considerable evidence of Barton's own, unrelated

fraud), counsel knew DiMeglio would testify to the contrary and thus wisely avoided any such

defense in a successful effort to keep DiMeglio off the stand. Because counsel did identify and offer

a defense, and because the defense offered was in essence the same defense Barton still advances on

collateral attack, counsel did not render ineffective assistance on this basis.

Barton's motion is DENIED on this ground.

**4.      Failure to Call Certain Witnesses**

Barton faults counsel for not calling certain witnesses to testify at trial. Barton attaches a

witness list identifying over sixty potential witnesses. Barton concedes a vast majority of these

witnesses did not respond to his requests to provide an affidavit. Barton also identifies thirteen

witnesses who did provide affidavits, and briefly summarizes their testimony.

The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored

in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial

strategy and because allegations of what a witness would have stated are largely speculative." *Day

v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Barton's burden is to "name the witness,

demonstrate that the witness was available to testify and would have done so, set out the content of

the witness's proposed testimony, and show that the testimony would have been favorable to a

particular defense." *Id.* As with the rest of Barton's ineffective assistance of counsel arguments, he cannot obtain relief unless he establishes a reasonable probability "the uncalled witnesses would have made any difference to the result." *Alexander v. McCotter*, 775 F.2d 595, 603 (5th Cir. 1985).

With respect to the majority of witnesses who did not provide affidavits, the Court must view any claim as to their willingness to testify and the content of their testimony skeptically. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." (internal quotation marks omitted)). Barton has not shown counsel was deficient for failing to call any of these individuals who were not willing to provide affidavits, nor has he shown the outcome of his trial would likely have been different had the jury heard their (wholly speculative) proposed testimony.

Barton's motion makes clear he believes DiMeglio should have been called. Collins attests he determined DiMeglio's testimony would be harmful to Barton's case, not helpful, and thus reasonably chose not to call DiMeglio. Collins Aff. at 3. Similarly, Finlayson and Tuckfield, the Triton executives Collins interviewed, were not called because Collins determined their testimony was damaging to Barton's defense. *Id.* Counsel's decisions are entitled to a presumption of reasonableness, and Barton's personal beliefs as to what favorable testimony these individuals would have provided is not enough to show counsel's performance was deficient. Further, there is no basis for believing the outcome of the trial would have been different had any of these individuals been called to testify as defense witnesses.

The Court now turns to the twelve potential witnesses who provided affidavits. *See* Mot. Vacate [#117-7, 8], Exs. F, G. Two, Barton's father and his brother Kris, were actually called as

witnesses. Barton also provides affidavits from his girlfriend, mother, and another brother. In addition to the obvious bias their testimony would have brought, their affidavits are largely cumulative of the testimony of Barton's father and his brother Kris. Another witness, Joe Turner, Barton's former attorney, indicated he was neither available nor willing to testify at trial. Had he been called, his testimony would have been limited to the amount of time needed to prepare Barton's defense, and thus would have been completely irrelevant and inadmissible. David Woodward offers some testimony about Barton's sale of NAP Partners. Donald Carnes, Barton's estate planner, addresses Barton's personal wealth, based on Barton's representations. This testimony is largely irrelevant, and in any event would not have changed the outcome of the trial. Collins Aff. at 5 (concluding "the sale of NAP Partners and the ownership of the Golf Course would not have made a difference in the outcome of the trial").

Brian Tucker, Vernon Kury, Anthony Demasi, and Rogelio Ibanez, Jr., speak favorably of Triton's business model and criticize the Government's trial approach to the accounting evidence. These witnesses seek to offer their opinions as to the legality of Triton's business model and the soundness of the Government's accounting analysis. Any such testimony would have been expert testimony. Barton was given a court-appointed forensic accountant, Martin, to testify as an expert, but Martin was not called because he ultimately concluded Barton was running a type of Ponzi scheme. Counsel was not deficient for failing to call these additional expert witnesses in light of Martin's analysis of the evidence, including the detailed accounting records Barton's proposed witnesses claim are necessary to understand Triton's operations. Additionally, as Collins recognizes in his affidavit, this testimony would not have altered the jury's verdict because Barton's problem

was not Triton's business model or structure, but Barton's use of investor money in ways contrary to what investors were told. *Id.* at 3.

Barton's motion is DENIED on this ground.

### 5.     Cumulative Errors

Barton also alleges ineffective assistance of counsel based on the combination and cumulative effect of the various alleged errors detailed in his ninety-five page memorandum. However, "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006). Because Barton has not shown his individual complaints rise to the level of ineffective assistance of counsel, their combination does not, either.

Barton's motion is DENIED on this ground.

### 6.     Conflict of Interest

Barton alleges Collins's representation was tainted by a conflict of interest with the managing partner of his law firm, Roy Minton. Barton met with Minton in 2009 to discuss concerns Barton had over possible fraud committed by Barton's co-defendant, John DiMeglio, in buying in to the Triton enterprise. Barton claims Minton advised him to buy out DiMeglio's interest and end the business relationship, which Barton claims "resulted in the entire loss of Triton and its investors." Def.'s Mem. [#117-1], at 91. Barton also claims Collins knew about this meeting and the advice Minton provided. From this contact, Barton alleges Collins's loyalties were divided between his client and his partner, and Collins was precluded from laying blame at DiMeglio's feet and calling Minton as a witness for fear of exposing some alleged malpractice stemming from Minton's advice to Barton.

Barton argues Collins's alleged conflict should be analyzed under the standards set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). In *Cuyler*, the Supreme Court held counsel may provide ineffective assistance, and prejudice may be presumed, where counsel "actively represented conflicting interests" and "an actual conflict of interest adversely affected [the] lawyer's performance." *Cuyler*, 446 U.S. at 350. In this case, however, *Cuyler* does not apply because Collins was not actively representing conflicting interests. Collins represented Barton, but never represented DiMeglio. The Fifth Circuit has held "*Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context." *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (*en banc*).[7] Barton's conflict-of-interest claim is thus analyzed under *Strickland*, and Barton must show Collins's actions were both deficient and prejudicial. *Id.* at 1272–73.

Collins's affidavit precludes any finding of deficiency under Barton's theory. Collins attests he first learned Barton and Minton had met after Collins was appointed to represent Barton. Gov't Resp. [#122-1], Ex. B (Collins Aff.), at 5. Collins denies ever having any knowledge of the substance of that meeting, including any advice given by Minton to Barton, prior to reading Barton's allegations in his § 2255 motion. *Id.* Further, Collins affirms his decision not to call DiMeglio—who pleaded guilty in his own case on the first day of trial—was based on his understanding of DiMeglio's likely testimony, in particular the high likelihood DiMeglio would directly implicate Barton in the fraud. *Id.* Even if the Court were to assume Collins had knowledge of the advice given—a fact for which there is no support in this record—his decision not to call DiMeglio and

---

[7] Barton's claim is more of an attorney-self-interest claim: Collins may have had a personal interest in not undermining his law firm partner. *See Beets*, 65 F.3d at 1271 (discussing duty of loyalty problems and self-interested attorneys).

Minton to the stand falls squarely within the type of conduct presumed to be "sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

Second, even if Collins's performance was deficient, Barton has not shown he was prejudiced. Barton was represented by two attorneys, and there is no allegation Gonzalez was similarly conflicted and thus improperly biased against calling DiMeglio or Minton to the stand. Additionally, counsel were justified in believing DiMeglio's testimony would likely damage Barton's defense rather than bolster it. Even if DiMeglio had taken the stand and fallen on the sword in an effort to exculpate Barton, there was still sufficient evidence of guilt—such as Barton's instructions to his assistant to fabricate financial statements to send to banks, with no involvement from DiMeglio—from which the jury could have convicted Barton. *See* Gov't's Resp. [#122-1], Ex. D (Nienhaus Test.), at 88–93. Barton has thus failed to show there is a reasonable probability the outcome of his case would have been different had Collins not had the alleged conflict of interest.

Barton's motion is DENIED on this ground.

**B.      *Brady* Violation**

Barton alleges the Government committed a *Brady* violation by failing to provide Barton's forensic accountant with a full version of the accounting software files comprising Triton's general ledger, including files from the QuickBooks and Yardi software programs. Prior to trial, the Government provided excerpts of these files showing deposits and disbursements from the accounts. The Government provided a DVD with the complete general ledger files on August 12, 2011, at the start of the second week of trial and on the same day the Government obtained the files from the receiver in charge of the Triton enterprise. Barton contends this late production prevented his expert

witness from fully analyzing Triton's financial activities and therefore prevented the expert from offering any testimony at trial.

## 1.     Procedural Default

"The Supreme Court has emphasized repeatedly that a 'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Because of this rule, a defendant "may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *Id.* at 232 (quoting *Frady*, 456 U.S. at 168).[8] There is a narrow exception for the "'extraordinary case . . . in which a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Barton did not raise his *Brady* claim on direct appeal, and he is therefore barred from raising it in his § 2255 motion unless he can show either cause and actual prejudice, or actual innocence. Barton's motion does not even attempt to meet these high standards.

To show cause for his procedural default, Barton must show "'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Carrier*, 477 U.S. at 488). "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the

---

[8] Barton's ineffective assistance of counsel claims fall within an exception to this general rule. *See United States v. Montes*, 602 F.3d 381, 387 (5th Cir. 2010) (describing the Fifth Circuit's policy of declining to reach *Strickland* claims on direct appeal because the district court generally has not had an opportunity to develop the factual record and rule on ineffective assistance of counsel claims prior to the filing of a § 2255 motion).

constitutional sense." *Id.* Barton offers no explanation for his failure to raise the *Brady* issue on direct appeal. He does not allege any official interference with his appeal. Barton does not, and could not, contend the factual or legal basis for his claim was not available at the time he appealed, because Barton's motion shows he and his counsel knew of the production problem before trial. Finally, Barton does not allege his appellate counsel was ineffective in any way. Barton has thus failed to show cause for his procedural default, and thus cannot overcome the procedural bar.

Even if Barton could show cause, he has not shown actual prejudice. Barton's burden is a heavy one, as he must show the alleged *Brady* violation "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Barton contends the sole reason the forensic accountant, Martin, was not called to testify was Martin's inability to properly prepare based on the Government's late production of the general ledger files. Def.'s Mem. [#117-1], at 89 ("The only reason the expert was not called was because he received only some of the data, in an unusable format, during trial, which was not timely enough or sufficient to prepare."). Martin's affidavit proves otherwise.

In his affidavit, Martin does contend he did not have adequate time to examine the accounting records prior to trial. Gov't Resp. [#122-2], Ex. J (Martin Aff.), at 2. However, Martin also admits "[t]he expenditure of investor funds for purposes other than what the funds were designated for indicated to me that the transaction was a Ponzi scheme." *Id.* at 3. With respect to his trial testimony, Martin states:

> As for my testimony, after consultation with attorneys Rip Collins and David Garcia and discussion with Mr. Barton it was determined that if I testified that the prosecutor would probably, over the objections of the defense counsel, get me to state that Mr. Barton was operating a Ponzi scheme although not a typical Ponzi scheme.

> Therefore, I would be converted to a witness for the prosecution damaging Mr.
> Barton.

*Id.* This is fully consistent with Martin's testimony at Barton's sentencing, in which Martin agreed

with the prosecutor and confirmed his review of Triton's books and records convinced him Barton's

operation was a kind of Ponzi scheme. Gov't's Resp. [#122-2], Ex. I (Martin Test.), at 39. In other

words, having access to the general ledger for nearly three months only further confirmed Martin's

position at the time of trial: Barton was running a kind of Ponzi scheme, and Martin would testify

to as much under oath. Barton has thus failed to show he was prejudiced by any alleged *Brady*

violation. Assuming the delayed production prevented Martin from testifying—an assumption

directly contrary to Martin's sworn affidavit[9]—the delay in all likelihood benefitted Barton, because

it prevented his own expert from taking the stand and telling the jury Barton was running a Ponzi

scheme.

Finally, Barton cannot show he is actually innocent. Barton's burden is "to show that 'in light

of all the evidence it is more likely than not that no reasonable juror would have convicted him.'"

*United States v. Scruggs*, 714 F.3d 258, 266 (5th Cir. 2013) (quoting *Bousley v. United States*, 523

U.S. 614, 623 (1998)). The evidence of Barton's guilt presented at trial was overwhelming. The Fifth

Circuit has already held the evidence was sufficient to sustain Barton's convictions on numerous

counts. *Barton*, 526 F. App'x at 363–64. The remaining counts are well supported by the trial

testimony of the Government's witnesses, including federal agents, more than a dozen victims of

Barton's scheme, and Barton's own employees who falsified documents at his specific direction.

Like many defendants facing lengthy prison sentences, Barton may truly believe he is innocent of

---

[9] *See also* Collins Aff. at 2 (acknowledging the delayed production prevented Martin from conducting a full analysis prior to trial, but concluding timely production of the files would not have changed the outcome of the trial).

all thirty-nine counts on which he was convicted by a jury of his peers. But Barton's subjective belief in his innocence, and his personal refusal to accept the jury's verdict in light of the evidence presented at trial, is insufficient to show he is actually innocent in this case.

Barton's *Brady* violation claim is thus procedurally barred, and Barton may not raise the claim in his § 2255 motion.

**2.      Merits of the *Brady* Claim**

Solely in the alternative, the Court briefly notes Barton's *Brady* claim would not entitle him to relief even if he could overcome the procedural bar. To establish a *Brady* violation, Barton must show the Government suppressed evidence favorable to Barton's defense, and Barton was prejudiced as a result. *United States v. Hughes*, 230 F.3d 815, 819 (5th Cir. 2000). Initially, Barton has failed to show the general ledger files are favorable to his defense. Barton's conclusory statements the evidence was favorable mean little when contrasted with Martin's testimony indicating the files did nothing to change his opinion, as Barton's own expert witness, Barton was running a kind of Ponzi scheme. Similarly, Barton has not shown he was prejudiced, which in the *Brady* context means "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). If the Government had provided the general ledger files earlier, and Barton's counsel had dared to call Martin at trial, Martin's testimony Barton was operating a form of Ponzi scheme would not have made an acquittal more likely. Barton has therefore failed to establish a *Brady* violation occurred.[10]

---

[10] Because Barton has not shown the evidence was favorable or shown he was prejudiced, the Court need not decide whether the Government suppressed the evidence by failing to provide it before the second week of trial. *See Hughes*, 230 F.3d at 819 ("Because we find that Hughes did not establish a reasonable probability that the evidence would have produced a different result, we do not need to consider whether Hughes established the other *Brady* components.").

## C.    Sufficiency of the Evidence

The Government plausibly read Barton's motion as raising various sufficiency of the evidence challenges to his conviction, and therefore addressed those issues out of caution. However, in his Reply, Barton clarifies he "made no claim that there was insufficient evidence for the jury to infer guilt." Mov.'s Reply [#123], at 1.[11]

## III.    Barton's Motion for Discovery

Barton also requests leave to conduct discovery and asks the Court to appoint another attorney to represent him. Barton's request does not comply with the rules for conducting written discovery, and in any event he has not demonstrated good cause for conducting any discovery in this case.[12] *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Good cause may be found when a petition for habeas corpus relief establishes a prima facie claim for relief." (internal quotation marks omitted)). Barton, as an intelligent person facing a significant prison sentence, understandably wants an opportunity to retry his case following his conviction and unsuccessful appeal. But § 2255 was not intended to allow endless relitigation of matters already decided, and discovery is therefore appropriately limited only to resolving factual disputes which, if resolved in the movant's favor, would entitle the movant to relief. *See id.* at 815. There are no such disputes here, and thus no need for additional discovery or the appointment of an attorney. The motion for discovery is DENIED.

---

[11] If Barton had raised such challenges, many would be merely duplicative of the sufficiency challenges he raised on direct appeal. Any others would be procedurally barred.

[12] For example, Rule 6(b) of the Rules Governing Section 2254 and 2255 Cases in the United States District Courts provides any proposed interrogatories and requests for admission must be included with the motion requesting discovery, and requested documents be identified. Barton did not provide any proposed discovery requests, though he did vaguely identify certain categories of documents he is seeking (e.g., "Barton's personal files," "Files for Banks and bank loans").

## Conclusion

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Barton's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

IT IS ORDERED that Movant Kurt Barton's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#117] is DENIED;

IT IS FURTHER ORDERED that Barton's Motion for Discovery [#118] is DENIED;

IT IS FURTHER ORDERED that Barton's Motion to Add Attachment [#124] is GRANTED;

-23-

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the _10th_ day of January 2014.


_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE